# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2684 | **DATE** | 4/29/2004 |
| **CASE TITLE** | CARTER vs. CHICAGO, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Motion (101-1) for summary judgment as to Carter's claims of use of excessive force against officers Whitehead, Garcia, Stahmer, and Farr is DENIED. Motion (104-1) for summary judgment as to Carter's claim against the City and as to Carter's claim of false arrest against defendants Whitehead, Garcia, and Wessel is GRANTED. Enter memorandum opinion and order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 3 - 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 131 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

LEANDER CARTER,

  Plaintiff,

  v.

CITY OF CHICAGO, et al.,

  Defendants.

No. 02 C 2684
Judge James B. Zagel

MAY 3 - 2004

## MEMORANDUM OPINION AND ORDER

### Factual Background

Plaintiff Leander Carter has brought claims, under 42 U.S.C. § 1983, against the City of Chicago and Officers Whitehead, Wessel, Garcia, Stahmer, and Farr for incidents that took place during and after his arrest. Carter alleges that the Officers used excessive force during and after his arrest and arrested him without probable cause. Carter alleges that the City perpetuates customs that permit officers to take such actions and to violate subjects' constitutional rights without fear of discipline.

The facts surrounding Carter's arrest and detention are as follows. On the evening of July 10, 2000, Officers Garcia and Wessel responded to a call for assistance from an alley off 91st street. Police officers had found Basil McClaine, who had been kidnaped and threatened, handcuffed in a Chevy Blazer. After arriving at the alley, Officers Wessel and Garcia met up with Officer Whitehead, who was on foot behind a residence at 9146 Dauphin Street. Officer Wessel let Officer Garcia out of their red, unmarked squad car and drove to the front of the residence where he saw Carter exiting the front door. Officer Wessel was wearing plain clothes, a black bulletproof vest, and his police star. Officer Wessel got out of his car, identified himself,

131

and yelled at Carter to stop. Carter claims that he did not see Officer Wessel's badge and did not hear Officer Wessel identify himself as a police officer. Carter ran around the house into the backyard toward Officers Whitehead and Garcia. Officers Whitehead and Garcia identified themselves and yelled at Carter to stop. Carter claims that he stopped, put his hands up in the air, turned slightly toward the officers, and dropped the black cell phone he was carrying. The Officers, however, claim that Carter continued to move toward them with a black object in his hand, which they believed was a weapon. Officer Whitehead shot Carter in the leg and Carter fell to the ground. Carter was then handcuffed by Officer Garcia who allegedly pressed his foot against Carter's neck.

After his arrest, Carter was taken to the Blue Island police station where he was detained. Carter alleges that during his detention either Officer Stahmer or Farr called him a "nigger," punched him in the groin, and threatened him with further use of force if he did not participate in a lineup. Officers Farr and Stahmer, however, claim they never interrogated Carter and were never alone with Carter. According to the Officers, the only contact they had with Carter was in giving him instructions during a lineup held on July 11, 2000 and, in Farr's case, asking Carter some questions during "booking." Officer Frank Podbielniak, the officer in charge of the investigation, claims that it was he and Detective Douglas Hoglund who attempted to interview Carter before the lineup, not Officers Farr and Stahmer. Officer Podbielniak attests that Officer Farr and Stahmer were never alone with Carter and did not question Carter outside the lineup and booking.

## Analysis

The City and the Officers now claim they are entitled to summary judgment on each of Carter's claims. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). In determining whether any genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The burden is on the moving party to identify portions of the pleadings, depositions, and other discovery-related materials that demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). Merely alleging a factual dispute is insufficient to defeat a motion for summary judgment. *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). Instead, the non-moving party must set forth specific facts, through affidavits or other materials, that demonstrate disputed material facts. *Anderson*, 477 U.S. at 256. A genuine issue of fact exists only when, based on the record as a whole, a reasonable jury could find for the non-movant. *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999).

### I. Officers Whitehead, Garcia, and Wessel

The Officers argue they are entitled to summary judgment on Carter's § 1983 claims of use of excessive force and false arrest for the following reasons: (A) the claims are barred by *Heck v. Humphrey*, (B) the claims are barred by collateral estoppel, (C) the claims are without merit, and (D) they are entitled to qualified immunity.

3

### A. *Heck v. Humphrey*

The Officers argue that Carter's § 1983 claims of excessive use of force and false arrest are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) because findings on those claims would invalidate Carter's conviction and sentence. In *Heck* the Supreme Court held that:

> "in order to recover damages for...harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."

*Id.* at 486-7.

It is important to note, however, that *Heck* is not an automatic bar against all § 1983 claims. "If the district court determines that the plaintiff's [§ 1983] action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* at 487. The Seventh Circuit has held that a false arrest claim "does not inevitably undermine a conviction" because "one can have a successful wrongful arrest claim and still have a perfectly valid conviction." *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996).

Carter's conviction was based on evidence that included witness testimony, the victims' identification of Carter in a photographic array, a lineup, and in court as well as his proximity, at the time of his arrest, to the victim, the other defendants, and the instrumentalities of the crime. The Officers do not indicate what, if any, pieces of evidence would be deemed inadmissable if Carter's § 1983 claim successful. Worst case, I think it is possible that the lineup identification and the fact that Carter fled from the police could become inadmissible. Given the weight of the evidence presented at trial, the exclusion of this evidence would not have affected Carter's

4

conviction. Thus, I find Carter's § 1983 claims for false arrest and use of excessive force are not barred by *Heck*.

### B. Collateral Estoppel

The Officers argue that Carter's false arrest and excessive use of force claims are barred by collateral estoppel because they were resolved in his criminal case. "The doctrine of collateral estoppel bars the trial of an issue that has been fairly and completely resolved in a prior proceeding." *Talarico v. Dunlap,* 281 Ill. App. 3d 662, 665 (Ill. App. Ct. 1996). After the close of his criminal trial, Carter brought a Motion for a New Trial before Judge Thomas Panichi in which he alleged, among other things, a lack of probable cause for his arrest. On November 8, 2001, Judge Panichi found all of Carter's claims, including the lack of probable cause claim, "to be without merit." (Def. Ex. P at 56). Since Carter's false arrest claim was adjudicated and resolved in his underlying criminal case, I find his current § 1983 claim for false arrest is barred by collateral estoppel.

Unlike the false arrest claim, the use of excessive force claim was not directly determined in the criminal case. Nonetheless, the Officers argue that it is also barred because it is "piggybacked" on Carter's allegations that the Officers lacked probable cause to arrest him. However, I disagree. A close relationship to a previously adjudicated claim is not enough to confer collateral estoppel. Thus, I find Carter's § 1983 use of excessive force claim is not precluded by collateral estoppel.

### C. The Merits

The Officers argue they are entitled to summary judgment on the merits of Carter's false arrest and excessive use of force claims. In order to succeed with a § 1983 claim for false arrest,

5

a plaintiff must show that the arrest was made without probable cause. *Booker v. Ward,* 94 F.3d 1052, 1057 (7th Cir. 1996). "The existence of probable cause for an arrest is an absolute bar to a § 1983 claim for unlawful arrest." *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir. 1989). When officers are working in concert on an investigation, probable cause for an arrest may be established by information possessed by any of those officers. *People v. Holveck,* 524 N.E.2d 1073 (Ill. App. Ct. 1988).

While Carter claims that he was arrested without probable cause, all the evidence is to the contrary. Carter's proximity to the victim, the instrumentalities of the crime, and his co-conspirators created probable cause for his arrest. One officer saw the Blazer attempt to pull into Carter's garage. Officer Wessel saw Carter exiting his house. Carter ran from Officer Wessel carrying what Officer Wessel believed was a gun. While Officers Whitehead and Garcia were placing Carter under arrest, Officer Wessel found Theodore Parish, who was wearing a police scanner, and a gun in the bushes a few feet away from Carter's backyard. Additionally, McClaine identified Carter as his kidnapper. These circumstances, which were likely considered by Judge Panichi, created sufficient probable cause for Carter's arrest. Thus, the Officers are entitled to summary judgment on Carter's false arrest claim.

Carter's claims for use of excessive force are judged by the Fourth Amendment's objectively reasonable standard. *Graham v. Connor,* 490 U.S. 386, 396 (1989). Whether the force used is "objectively reasonable" depends on the facts and circumstances in each case. *Id.* Generally speaking, courts look at the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." In this case, there is some dispute over

the events that occurred after Carter ran to the backyard. Officers Whitehead and Garcia claim that Carter did not stop running toward them even after they announced themselves as police officers and told him to do so. Carter, on the other hand, claims that he stopped, dropped the cell phone, put his hands in the air, and stood in front of the officers for between ten and fifteen seconds. The differences in the Officers' and Carter's recollections of events leading up to the shooting create a genuine issue of material fact, making summary judgment inappropriate at this time.

### D. Qualified Immunity

Finally, the Officers argue that they are entitled to qualified immunity. Under the doctrine of qualified immunity, public officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). As the Supreme Court has explained "[a qualified immunity defense] provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity shields the Officers from liability from Carter's claims for false arrest. As discussed above, the Officers had sufficient probable cause to arrest Carter. Since the arrest was well within the limits of the law, the Officers are entitled to qualified immunity. Qualified immunity does not, however, shield the Officers from Carter's claims for use of excessive force. Unlike probable cause for the arrest, the reasonableness of force used during Carter's arrest has not been established. If Officers Whitehead and Garcia knowingly used an

unreasonable amount of force, as is claimed by Carter, they are not entitled to qualified immunity.

## II. Officers Farr and Stahmer

The Officers argue that they are entitled to summary judgment on Carter's § 1983 claims for use of excessive force and intimidation because Carter has not shown they were personally involved in Carter's interrogation. Generally speaking, liability under § 1983 must be based on personal responsibility. *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir. 1984). "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). The Officers argue that Carter cannot show they were personally involved in his alleged mistreatment. The Officers claim that they were never involved in interrogating Carter and were never alone with Carter. Officer Podbielniak, the officer in charge of the investigation, confirms these Officers' statements. However, Carter claims in his Complaint, Deposition, and Affidavit that it was either Officer Farr or Stahmer who threatened him, punched him in the groin, and called him a "nigger." Carter's assertions are sufficient to create a genuine issue of material fact on this issue.

The Officers also argue that summary judgment is appropriate because Carter has failed to comply with Local Rule 56.1. The Officers point out that Carter's response to their Statement of Undisputed Facts affirmatively sets forth facts and fails to reference specific parts of the record or supporting affidavits. Because of these deficiencies, the Officers claim that their Statement of Undisputed Facts should be accepted as true. However, district courts must construe pro se pleadings liberally. *Haines v. Kerner*, 404 U.S. 519 (1972). "The essence of

8

liberal construction is to give a pro se plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). I have reviewed all of Carter's filings with respect to this motion and find them to be sufficiently understandable. Carter has gone through the Officers' Undisputed Facts and responded to each one stating that he admits, denies, or does not know. While he does not reference the record or affidavits in his denials, he clearly and succinctly states the reason for his denial. Additionally, the denials are generally consistent with the record and with the supporting affidavits. For these reasons, I find that summary judgment on Carter's claims for use of excessive force is inappropriate.

### III. The City of Chicago

In his Complaint, Carter alleges that the City has allowed customs and practices to exist that permitted the police officers to violate his constitutional rights. Specifically, Carter alleges that the City failed to adequately train its officers, allowed its officers to engage in misconduct without fear of punishment, and allowed its officers to maintain a "code of silence." The City claims it is entitled to summary judgment on this claim because Carter cannot and has not met the requirements of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and its offspring. In *Monell*, the Supreme Court held that a local government could only be held liable for the acts of its employees or agents when a policy or custom, which was propagated by lawmakers or officials, caused the injury. *Id.* at 694. To satisfy *Monell*, the plaintiff must show that he sustained a constitutional injury and that the injury was caused by an official policy of the municipality. *See Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994); *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986); *City of Canton v. Harris*, 489 U.S. 378 (1989).

9

Carter has presented no evidence tending to show that the City promulgated customs or policies that allowed the Officers to violate subjects' rights as required by *Monell*. Other than Carter's own assertions, there is no evidence in the record that the City failed to train or discipline its employees. The City, on the other hand, has presented evidence that Chicago Police officers are taught the requirements for use of deadly force and are trained in the use of such force. Additionally, the Rules and Regulations promulgated by the City expressly prohibit police officers from violating any law and state that any misconduct will be investigated. The City has produced evidence that those investigations have led it to discipline officers. Carter has presented no evidence to the contrary. In fact, Carter even states in his own Complaint that:

> an Office of Professional Standards investigation...was held on July 11, 2000 at 6:15am where several Chicago Police Department, Bureau of Operational Services, and Office of Professional Standards personnel attended to discuss facts relevant to Plaintiff's being shot and arrested. (P. Complaint at 18).

The fact that the City investigated the Officers' use of force in Carter's own arrest directly contradicts Carter's allegations that the City has a policy of allowing its officers to indiscriminately and without fear of discipline violate suspects' rights.

There is also no evidence in the record, other than Carter's own assertions, to support Carter's claim that there exists a "code of silence" within the Chicago police force. The City has presented evidence that it conducts investigations during which it requires officers to be truthful and forthcoming with evidence of misconduct. Carter bases his "code of silence" assertion on statements made by his parents and uncle, who are former Chicago police officers. Carter, however, refuses to supply any contact information concerning his parents or his uncle and has not submitted any admissible evidence concerning these statements.

Additionally, § 1983 usually requires that plaintiffs plead more than a single unconstitutional incident to state a claim based on municipal policy. *Calusinski v. Kruger*, 24 F.3d 931, 936 (7th Cir. 1994). Generally, isolated acts committed by non-policymaking officials do not amount to a "custom," which "implies a habitual practice or a course of action that characteristically is repeated under like circumstances." *Sims v. Mulcahy*, 902 F.2d 524, 542 (7th Cir. 1990). Carter has not produced any evidence to suggest that the failure to train, failure to discipline, or the "code of silence" was widespread. To support his claims, Carter points to two cases– *Mearday v. City of Chicago*, 196 F. Supp. 2d 700 (N.D. Ill. 2002) and Latanya Haggerty's case. However, neither of these cases work to support Carter's claims. In *Mearday*, the court found that the officer had acted in an objectively reasonable manner, *Id.* at 715, and in Latanya Haggerty's case the officers involved were disciplined by the police force. Therefore, I find summary judgment on Carter's § 1983 claim against the City is appropriate.

For the reasons stated herein, the Defendants' Motions for Summary Judgment are GRANTED as to Carter's claims against the City and as to Carter's claim of false arrest against Officers Whitehead, Garcia, and Wessel. Defendants' Motions for Summary Judgment are DENIED as to Carter's claims of use of excessive force against Officers Whitehead, Garcia, Stahmer, and Farr.

ENTER:

James B. Zagel
United States District Judge

DATE: 29 April 2004